# EXHIBIT B

At IAS/Special Term Part ___ of the
Supreme Court of the State of New York,
held in and for the County of New York,
held at the Courthouse thereof,
located at 60 Centre Street,
New York, New York on the ___
day of January, 2024

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY OF NEW YORK

PRESENT: Hon. _____

| | |
|---|---|
| THE COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES,<br><br>                    Plaintiff,<br><br>            v.<br><br>BUCKEYE COACH LLC; CARDUAN TOURS LLC; CLASSIC ELEGANCE COACHES LLC; COASTAL CREW CHANGE COMPANY LLC; EJECUTIVO ENTERPRISES INC.; EL PASO UNITED CHARTERS LLC; GARCIA AND GARCIA ENTERPRISES INC. (D.B.A. FRANCISCO TOURS); JY CHARTER BUS INC.; LILY'S BUS LINES INC.; MAYO TOURS, INC.; NORTENO EXPRESS LLC; ROADRUNNER CHARTERS INC.; SOUTHWEST CREW CHANGE COMPANY LLC; TRANSPORTES REGIOMONTANOS INC. (D.B.A. AUTOBUSES REGIOMONTANOS); VLP CHARTER LLC; WINDSTAR LINES INC.; and WYNNE TRANSPORTATION LLC.,<br><br>                    Defendants. | Index No. _____<br><br>**ORDER TO SHOW CAUSE** |

UPON the accompanying Complaint, verified on January 4, 2024, and the Affirmation of

the New York City Social Services Commissioner Molly Park, sworn to on January 4, 2024, and

the exhibits annexed thereto, and the Affirmation of Tanaz Moghadam, Esq., sworn to on January 4, 2024, and the Memorandum of Law, and good cause being alleged, it is hereby:

ORDERED, that, absent agreement by the parties and Court on a stipulated alternate briefing and hearing schedule resulting from the parties' meet and confer process beginning shortly after the commencement of this action, Defendants herein, or their attorneys, show cause at IAS Part ____ of this Court, to be held at the Courthouse located at 60 Centre Street, New York, New York on the _____ day of January 2024 in Room ___, at ___ a.m./p.m. of that day, or as soon thereafter as counsel can be heard, why an order should not be made and entered:

(i)     Enjoining, pursuant to Section 149 of the New York Social Services Law, the Defendants to post a bond in an amount to be determined by the Court to pay the Plaintiff New York City Social Services Commissioner for the cost of caring for individuals who have already been transported from Texas to New York City to implement the Texas Governor's plan;

(ii)    Enjoining, pursuant to Section 149 of the New York Social Services Law, the Defendants to pay the Plaintiff New York City Social Services Commissioner for the cost of caring for individuals who are transported after the date of the Court's order from Texas to New York City to implement the Texas Governor's plan; and

(iii)   Granting such other and further relief as this Court deems just and proper;

AND, proper cause being alleged, IT IS HEREBY:

FURTHER ORDERED that Defendants' answering papers, if any, shall be served upon Plaintiff's counsel by email on or before the ___ day of January, 2024, no later than ___ a.m./p.m.; and it is

FURTHER ORDERED that Plaintiff's reply papers shall be served upon Defendants' counsel by email on or before ___ day of January, 2024, no later than ___ a.m./p.m..; and it is

FURTHER ORDERED that personal service of a copy of this Order To Show Cause, together with the Summons and Verified Complaint, and the supporting papers, upon the Defendants' designated process agents, for which, in accordance with 49 C.F.R. § 366.4, the Defendants are required to file such a designation with the U.S. Department of Transportation for all 48 contiguous states, on or before the ___ day of January, 2024, no later than ___ a.m./p.m., shall be deemed good and sufficient service thereof.

ENTER:

_____
J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

THE COMMISSIONER OF THE NEW YORK
CITY DEPARTMENT OF SOCIAL SERVICES,

                Plaintiff,

      v.

BUCKEYE COACH LLC; CARDUAN TOURS
LLC; CLASSIC ELEGANCE COACHES LLC;
COASTAL CREW CHANGE COMPANY LLC;
EJECUTIVO ENTERPRISES INC.; EL PASO
UNITED CHARTERS LLC; GARCIA AND
GARCIA ENTERPRISES INC. (D.B.A.
FRANCISCO TOURS); JY CHARTERS BUS
INC.; LILY'S BUS LINES INC.; MAYO TOURS,
INC.; NORTENO EXPRESS LLC;
ROADRUNNER CHARTERS INC.; SOUTHWEST
CREW CHANGE COMPANY LLC;
TRANSPORTES REGIOMONTANOS INC.
(D.B.A. AUTOBUSES REGIOMONTANOS); VLP
CHARTER LLC; WINDSTAR LINES INC.; and
WYNNE TRANSPORTATION LLC,

                Defendants.

Index No. _____

---

**PLAINTIFF COMMISSIONER OF THE NEW YORK CITY
DEPARTMENT OF SOCIAL SERVICES'S MEMORANDUM OF LAW IN SUPPORT
OF HER APPLICATION FOR A PRELIMINARY INJUNCTION**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Brad S. Karp
Steven Banks
Michele Hirshman
1285 Avenue of the Americas
New York, NY  10019
(212) 373-3000
sbanks@paulweiss.com
mhirshman@paulweiss.com

SYLVIA O. HINDS-RADIX
Corporation Counsel of the City of New York
Muriel Goode-Trufant, First Assistant
Corporation Counsel
100 Church Street, 6-101
New York, NY  10007
(212) 356-2100
mgoodetr@law.nyc.gov

*Attorneys for Plaintiff Commissioner of the
New York City Department of Social
Services*

Case 1:24-cv-00326-VSB    Document 1-2    Filed 01/16/24    Page 7 of 34

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ iv

PRELIMINARY STATEMENT ................................................................................................... 1

I.    STATEMENT OF FACTS .................................................................................................. 1

II.    ARGUMENT ....................................................................................................................... 2

    A.  Standard of Review............................................................................................................ 2

    B.  The Commissioner Is Likely to Succeed on the Merits..................................................... 2

    C.  The Balance of the Equities Weighs in the Commissioner's Favor ................................... 5

    D.  The Commissioner Will Suffer Irreparable Injury Absent Injunctive Relief...................... 5

III.    CONCLUSION .................................................................................................................... 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Buchanan Capital Mkts., LLC* v. *DeLucca*,
    144 A.D.3d 508, 509 (1st Dep't 2016) ....................................................................11

*City of N.Y.* v. *Beam Bike Corp.*,
    2022 N.Y. App. Div. Lexis 3684 (1st Dep't June 9, 2022) ......................................7

*City of N.Y.* v. *Golden Feather Smoke Shop, Inc.*,
    597 F.3d 115 (2d Cir. 2010)................................................................................7, 10

*County of Westchester* v. *United Water New Rochelle*,
    32 A.D.3d 979 (2d Dep't 2006) ................................................................................7

*Edwards* v. *State of California*,
    314 U.S. 160 (1941) ..................................................................................................7

*Ma* v. *Lien*,
    198 A.D.2d 186 (1st Dep't 1993) ............................................................................10

*Shapiro* v. *Thompson*,
    394 U.S. 618 (1969), *overruled on other grounds by Edelman* v. *Jordan*, 415
    U.S. 651 (1974)..........................................................................................................7

*Thomas* v. *Ross & Shaw*,
    1832 WL 2855 (N.Y. Sup. Ct. 1832).........................................................................8

**Statutes**

New York Social Services Law Section 149 ....................................................6, 8, 10, 11

Texas Public Information Act...............................................................................................9

**Other Authorities**

New York City Emergency Executive Order 538 ...............................................................9

## PRELIMINARY STATEMENT

Plaintiff Commissioner of the New York City Department of Social Services respectfully submits this memorandum of law in support of the Commissioner's application for a preliminary injunction to enjoin Buckeye Coach LLC; Carduan Tours LLC; Classic Elegance Coaches LLC; Coastal Crew Change Company LLC; Ejecutivo Enterprises Inc.; El Paso United Charters LLC; Garcia and Garcia Enterprises Inc. (d.b.a. Francisco Tours); JY Charter Bus Inc.; Lily's Bus Lines Inc.; Mayo Tours, Inc.; Norteno Express LLC; Roadrunner Charters Inc.; Southwest Crew Change Company LLC; Transportes Regiomontanos Inc. (d.b.a. Autobuses Regiomontanos); VLP Charter LLC; Windstar Lines Inc.; and Wynne Transportation LLC (collectively, "Defendants") pursuant to New York Social Services Law Section 149 to: (a) pay the New York City Social Services Commissioner for the costs of care for the at least 33,600 individuals they have already transported to New York City to implement the Texas Governor's publicly articulated plan to shift the traditional cost of migration at the Southern Border to New York City and other urban areas in order to force a change in national immigration policy; and (b) pay for the cost of care for any additional individuals whom they transport, or cause to be transported, in the future from Texas to New York City to implement the Texas Governor's plan.

## I.   STATEMENT OF FACTS

A full statement of the facts regarding the Defendants' implementation of the Texas Governor's publicly-articulated plan, the resulting cost shift to New York City, and applicable legal requirements is set forth in the accompanying Verified Complaint ("Complaint") and affirmation of New York City Social Services Commissioner Molly  Park ("Park Affirmation").

1

## II.    ARGUMENT

### A.    Standard of Review

In general, a court sitting in equity in a government enforcement action such as this one has broad discretion to fashion appropriate equitable relief under the circumstances. When a government actor seeks a preliminary injunction to enjoin illegal acts in order to protect the public interest, it need only demonstrate a likelihood of success on the merits and that the equities weigh in its favor. *See City of N.Y.* v. *Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 121 (2d Cir. 2010) ("requiring a party seeking a statutorily-sanctioned injunction to make an additional showing of irreparable harm . . . is not required"). *See also City of New York v. Beam Bike Corp.*, 206 A.D.3d 447, 447–48 (2022) ("A municipality seeking a preliminary injunction to enforce compliance with its ordinances or regulations in order to protect the public interest … need only demonstrate a likelihood of success on the merits and that the equities weigh in its favor; it is not required to show proof of irreparable harm.") (*citing People* v. *Apple Health & Sports Clubs*, 174 A.D.2d 438, 438-39 (1st Dep't 1991), aff'd 80 N.Y.2d 803 (1992); *County of Westchester* v. *United Water New Rochelle*, 32 A.D.3d 979, 980 (2d Dep't 2006).

### B.    The Commissioner Is Likely to Succeed on the Merits

The Defendants' implementation of the Texas Governor's plan is not part of a human-centered initiative to help individuals vindicate a constitutional right to travel within the United States. *See Shapiro* v. *Thompson*, 394 U.S. 618, 631 (1969), *overruled on other grounds by Edelman* v. *Jordan*, 415 U.S. 651 (1974). Nor is the Defendants' implementation of the Texas Governor's plan protected by *Edwards* v. *State of California*, 314 U.S. 160 (1941), which struck down a California statute criminalizing the transport into the state in a private car of the driver's brother-in-law who might have needed public benefits. Stripped to its essentials, the Texas Governor's publicly-articulated plan – which the Defendants have knowingly

2

implemented – is to shift to New York City and other urban areas the traditional cost of migration at the Southern Border so that they "wak[e] up to the reality that open border policies are failed policies." Complaint ¶ 3.

New York has a law to address just this kind of conduct. Section 149 of the New York Social Services Law requires that "[a]ny person who knowingly brings, or causes to be brought a needy person from out of state into this state for the purpose of making him a public charge . . . shall be obligated to convey such person out of state or support him at his own expense."

Section 149 explicitly authorizes a Social Services Commissioner to bring an action to enforce the statute. In this lawsuit, the New York City Social Services Commissioner seeks payment from the Defendants for the costs of care for the at least 33,600 individuals they have already transported, or caused to be transported, to New York City as part of the Texas Governor's plan, and to pay for the cost of care for any additional individuals transported in the future from Texas to New York City as part of the Texas Governor's plan. Complaint ¶ 7.

As construed in the 19th century caselaw regarding a similar predecessor statute, New York has narrowly targeted the class of persons from whom the costs of such care can be recovered. That class is limited to situations where there is the "bad faith" transport of people into New York with the "evil intention" of shifting the costs of the care to New York. *Thomas* v. *Ross & Shaw*, 1832 WL 2855, *2-3 (N.Y. Sup. Ct. 1832). This limitation protects individual "carriers of passengers" who "are within the letter, but *not* within the spirit of the act." *Id.* at *2 (emphasis added). The transportation of tens of thousands of individuals from Texas to New York for "the purpose of making [them] a public charge" in contravention of Section 149 certainly meets the standard that New York courts have used to define "bad faith" in this context

– the intent to "discharge or exonerate" one jurisdiction "and thereby charge" another jurisdiction with the burden of care. *Id.* at *3.

As testament to their "bad faith" and "evil intent," the Defendants are receiving more for their services than it would cost to buy a one-way ticket from Texas to New York City on a regularly-scheduled bus.  According to public reporting based on data obtained under the Texas Public Information Act, the Defendants receive roughly $1,650 per person on chartered buses compared to $291 for a single one-way ticket.  Complaint ¶ 9.

As further evidence of their knowledge as well as their "bad faith," certain of the Defendants are now evading, or assisting others in evading, the requirements of recently issued New York City Emergency Executive Order 538 (the "Executive Order").  The Executive Order establishes a notice, time and place requirement for any operator of a charter bus "who knows or reasonably should know that such charter bus will be transporting ten or more passengers who are likely to seek emergency shelter and other immediate services in New York City."  Executive Order § 2.   Under the notice requirement, operators must alert the City of their anticipated date and time of arrival and provide information regarding, for example, the number of passengers, whether single adults or members of family are on board, the bus drivers' name, and a description of the charter bus.  Further, unless the City has approved an alternate drop off time and location in advance, the Executive Order requires drop offs to be between 8:30 a.m. to 12:00 p.m., Monday through Friday, at loading zones on 41st Street between 8th and 9th Avenues in Manhattan.   Complaint ¶ 11.

Within days of the issuance of the Executive Order, rather than comply, certain of the Defendants have begun to discharge individuals outside of New York City and give them one-way public transportation fare to travel into New York City.  Complaint ¶ 12.

4

In implementing this "bad faith" plan, there can be no doubt that the Defendants are liable under Section 149 for the costs of care for the tens of thousands of individuals they have already transported from Texas to New York City and any additional individuals they transport in the future. The cost of providing care for the at least 33,600 people who the Defendants have already transported, or caused to be transported, to New York City is no less than approximately $708,000,000. Complaint ¶ 10; Park Affirmation ¶¶ 38-39.

### C. The Balance of the Equities Weighs in the Commissioner's Favor

The balancing of the equities "simply requires the court to look to the relative prejudice to each party accruing from a grant or a denial of the requested relief." *Ma* v. *Lien*, 198 A.D.2d 186, 186-87 (1st Dep't 1993).

Here, the prejudice to the City of New York is real and undisputed. The approximately $708,000,000 is not a regular cost of care for which the City of New York has budgeted, and these increased costs are having an impact on City services. Complaint ¶ 39; Park Affirmation ¶¶ 5-6.

In contrast, the Defendants have earned millions of dollars by providing transportation services that they do not traditionally offer in order to implement the Texas Governor's cost-shifting plan. Complaint ¶ 4.

Any claimed prejudice alleged by the Defendants is significantly outweighed by the prejudice the City of New York will suffer absent injunctive relief.

### D. The Commissioner Will Suffer Irreparable Injury Absent Injunctive Relief

As indicated above, the Commissioner need not prove irreparable injury to meet the burden of proof in seeking a preliminary injunction to enjoin illegal acts. *See City of N.Y.* v. *Golden Feather*, 597 F.3d at 121.

Even if the Commissioner were required to establish irreparable injury, such injury in New York has traditionally meant injuries for which money damages are insufficient. *Buchanan Capital Mkts., LLC* v. *DeLucca*, 144 A.D.3d 508, 509 (1st Dep't 2016).  Here, the Commissioner can show that the Defendants' implementation of the Texas Governor's plan cannot be remedied sufficiently with money damages paid after the fact.  Indeed, every day these increased costs are having an impact on City services.  For those who suffer from that impact, a money judgment after the fact will be cold comfort.

Accordingly, the Court should issue the requested relief.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, the Commissioner respectfully requests that this Court enter a preliminary injunction:

(i)    Enjoining, pursuant to Section 149 of the New York Social Services Law, the Defendants to post a bond in an amount to be determined by the Court to pay the Plaintiff New York City Social Services Commissioner for the cost of caring for individuals who have already been transported from Texas to New York City to implement the Texas Governor's plan;

(ii)    Enjoining, pursuant to Section 149 of the New York Social Services Law, the Defendants to pay the Plaintiff New York City Social Services Commissioner for the cost of caring for individuals who are transported after the date of the Court's order from Texas to New York City to implement the Texas Governor's plan; and

(iii)    Granting such other and further relief as this Court deems just and proper.

6

Dated: January 4, 2024                PAUL, WEISS, RIFKIND, WHARTON &
     New York, New York              GARRISON LLP

                                                   By:  /s/ Steven Banks

                                                   Brad S. Karp
Steven Banks
Michele Hirshman
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
sbanks@paulweiss.com
mhirshman@paulweiss.com

SYLVIA O. HINDS-RADIX
Corporation Counsel of the City of New
York

By:  /s/ Muriel Goode-Trufant

Muriel Goode-Trufant
First Assistant Corporation Counsel
OFFICE OF THE CORPORATION COUNSEL OF
THE CITY OF NEW YORK
100 Church Street, 6-101
New York, NY 10007
(212) 356-2100
mgoodetr@law.nyc.gov

*Attorneys for Plaintiff Commissioner of
the New York City Department of Social
Services*

## Certificate of Compliance with Word Count

Pursuant to Section 202.8-b of the New York Codes, Rules and Regulations, I certify that this memorandum of law complies with that rule because it contains 1,806 words. In making this certification, I relied on Microsoft Word's "Word Count" tool.

Dated: January 4, 2024
      New York, New York

                      By: /s/ Steven Banks
                              Steven Banks
                              *Attorney for the Plaintiff*

8

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

THE COMMISSIONER OF THE NEW YORK
CITY DEPARTMENT OF SOCIAL SERVICES,

Plaintiff,

v.

BUCKEYE COACH LLC; CARDUAN TOURS
LLC; CLASSIC ELEGANCE COACHES LLC;
COASTAL CREW CHANGE COMPANY LLC;
EJECUTIVO ENTERPRISES INC.; EL PASO
UNITED CHARTERS LLC; GARCIA AND
GARCIA ENTERPRISES INC. (D.B.A.
FRANCISCO TOURS); JY CHARTER BUS INC.;
LILY'S BUS LINES INC.; MAYO TOURS, INC.;
NORTENO EXPRESS LLC; ROADRUNNER
CHARTERS INC.; SOUTHWEST CREW
CHANGE COMPANY LLC; TRANSPORTES
REGIOMONTANOS INC. (D.B.A. AUTOBUSES
REGIOMONTANOS); VLP CHARTER LLC;
WINDSTAR LINES INC.; and WYNNE
TRANSPORTATION LLC,

Defendants.

---

Index No. _____

**AFFIRMATION OF NEW
YORK CITY SOCIAL
SERVICES COMMISSIONER
MOLLY PARK**

I affirm this 4th day of January, 2024, under the penalties of perjury under the

laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I

understand that this document may be filed in an action or proceeding in a court of law:

1.  I am the Commissioner of the New York City Department of Social

Services, and I am responsible for administering social services and public assistance programs,

including shelter, for some three million low-income New Yorkers annually.  I have held this

position since March 2023.  I have spent my entire professional career in public service in

government and in the non-profit sector.  My record of service and senior leadership and

Case 1:24-cv-00326-VSB   Document 1-2   Filed 01/16/24   Page 18 of 34

managerial positions is set forth in my resume, which is attached as Exhibit A. I submit this affirmation in support of the motion seeking a preliminary injunction against the Defendants, and this affirmation is based upon my personal knowledge, a review of business records of the City of New York, and communications with New York City officials.

2.      Beginning in April 2022, the Defendants have carried out the Texas Governor's plan to transport individuals from Texas to New York City to shift the costs of migration at the Southern Border from Texas to New York as part of the Texas Governor's plan to force a change in national immigration policy.

3.      According to the Texas Governor's public statements, from April 2022 to December 29, 2023, the Defendants have transported, or caused to be transported, at least 33,600 individuals from Texas to New York City as part of this plan to shift costs from Texas to New York City. Press Release, Office of the Texas Governor, Operation Lone Star Bolsters Historic Border Security Mission In 2023 (Dec. 29, 2023), https://gov.texas.gov/news/post/operation-lone-star-bolsters-historic-border-security-mission-in-2023. *See also* Gov. Greg Abbott (@Gov Abbott), TWITTER (Dec. 19, 2023, 11:45 AM), https://twitter.com/GregAbbott_TX/status/1737152058950648031; Gov. Greg Abbott (@GovAbbott), TWITTER (Jul. 5, 2023, 7:15 PM), https://twitter.com/GovAbbott/status/1676731431962423296; Gov. Greg Abbott (@GovAbbott), TWITTER (Aug. 5, 2022, 3:00 PM), https://twitter.com/GovAbbott/status/1555629960441864192.

4.      Some or all of the Defendants are continuing these transports at a significant rate.

5.      As determined by New York City staff, from April 2022 through December 2023, the City has spent an estimated $3,500,000,000 on shelter and services for 164,500 individuals who have received care through the City's shelters for asylum seekers. According to

the Texas Governor, at least 33,600 individuals have been transported from Texas to New York City since August 2022. Therefore, about one in five of the individuals who have received care through the City's shelters for asylum seekers were transported from Texas. Accordingly, to date, the cost of providing care to those individuals is no less than approximately $708,000,000.

6.    These costs are not regular costs of care for which New York City has budgeted, and these increased costs are having an impact on City services. As the Texas Governor has stated publicly, this is exactly the result that the actions of the Defendants are designed to achieve – shifting the costs of migration at the Southern Border from Texas to New York in order to force a change in national immigration policy.

7.    The New York City Social Services Commissioner is specifically empowered under Social Services Law 149 to recoup the cost of care in this situation. Invoking Social Services Law 149 in this context is specifically a response to the "bad faith" conduct of the Defendants in their implementation of the Texas Governor's plan and is not meant to impede the right to travel enshrined in our Constitution. New York City has long opened its doors to those who are in need of temporary housing assistance and continues to provide emergency assistance to those in need.

8.    In addition, the New York City Mayor has issued an Executive Order dated December 27, 2023 to establish reasonable time and place restrictions on the transports that the Defendants are carrying out. But, as set forth in the Verified Complaint, certain of the Defendants are evading the Executive Order and putting the individuals they are transporting from Texas at risk of harm.

3

Case 1:24-cv-00326-VSB   Document 1-2   Filed 01/16/24   Page 20 of 34

9.      In the absence of the relief requested, the Defendants will not indemnify New York City for the cost of care of the individuals they are transporting, or causing to be transported, from Texas to shift the costs of care to New York City.

10.     No prior request has been made for the relief requested on this application.

WHEREFORE, I respectfully ask the Court to grant the relief requested herein.

_____

Molly Park

## Certificate of Compliance with Word Count

Pursuant to Section 202.8-b of the New York Codes, Rules and Regulations, I certify that this affirmation complies with that rule because it contains 749 words. In making this certification, I relied on Microsoft Word's "Word Count" tool.

Dated:  January 4, 2024
       New York, New York

By: _____
      Steven Banks
      *Attorney for the Plaintiff*

5

Case 1:24-cv-00326-VSB   Document 1-2   Filed 01/16/24   Page 22 of 34

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

THE COMMISSIONER OF THE NEW YORK
CITY DEPARTMENT OF SOCIAL SERVICES,

                            Plaintiff,

        v.

BUCKEYE COACH LLC; CARDUAN TOURS
LLC; CLASSIC ELEGANCE COACHES LLC;
COASTAL CREW CHANGE COMPANY LLC;
EJECUTIVO ENTERPRISES INC.; EL PASO
UNITED CHARTERS LLC; GARCIA AND
GARCIA ENTERPRISES INC. (D.B.A.
FRANCISCO TOURS); JY CHARTER BUS INC.;
LILY'S BUS LINES INC.; MAYO TOURS, INC.;
NORTENO EXPRESS LLC; ROADRUNNER
CHARTERS INC.; SOUTHWEST CREW
CHANGE COMPANY LLC; TRANSPORTES
REGIOMONTANOS INC. (D.B.A. AUTOBUSES
REGIOMONTANOS); VLP CHARTER LLC;
WINDSTAR LINES INC.; and WYNNE
TRANSPORTATION LLC,

                          Defendants.

Index No. _____
Hon. _____

**AFFIRMATION OF TANAZ
MOGHADAM**

      Tanaz Moghadam affirms the following to be true under the penalties of perjury, pursuant

to Civil Practice Law and Rules (CPLR) 2106:

      1.  I am a Pro Bono Attorney with the law firm Paul, Weiss, Rifkind, Wharton &

Garrison LLP, attorneys for the Plaintiff Commissioner of the New York City Department of

Social Services in the above-captioned action.  I am admitted to practice law in New York State,

and I am fully familiar with the Order To Show Cause and submit this affirmation in support of

the relief requested therein.

2. This is an important public interest matter involving Defendants' transportation of individuals from Texas to New York City to shift the costs of migration at the Southern Border from Texas to New York as part of the Texas Governor's plan to force a change in national immigration policy.

3. In light of the nature of the case, I respectfully request that the Court set the case down for a hearing on January 19, 2024, with answering papers served on Plaintiff's counsel no later than January 12, 2024 and reply papers served on Defendants' counsel no later than January 18, 2024 by email. I also respectfully request that the Court permit the parties to suggest alternative dates for the Court's consideration, upon consent.

4. I respectfully request permission to serve the Summons and Verified Complaint and supporting papers and Memorandum of Law personally on the Defendants' designated process agents because, in accordance with 49 C.F.R. § 366.4, the Defendants are required to file such a designation with the U.S. Department of Transportation for all 48 contiguous states.

5. No prior request has been made for this relief.

I affirm this 4th day of January, 2024 under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Dated:   January 4, 2024
         Washington, DC

                                        _____
                                            Tanaz Moghadam

2

## Certificate of Compliance with Word Count

Pursuant to Section 202.8-b of the New York Codes, Rules and Regulations, I certify that this affirmation complies with that rule because it contains 327 words.  In making this certification, I relied on Microsoft Word's "Word Count" tool.


Dated:  January 4, 2024
        New York, New York

By: __/s/ Steven Banks_____
     Steven Banks
     *Attorney for the Plaintiff*

3

# Exhibit A

# MOLLY WASOW PARK

## *Employment Experience*

**Commissioner, New York City Department of Social Services**
*New York City, 2023-present*
Oversee the largest social services agency in the United States with responsibility for services including but not limited to homeless services, public benefit administration, delivery of rental subsidies, adult protective services, employment services, supportive housing lease-up, and public burials.

- Work with City Hall, Office of Management and Budget and other key stakeholders to set social service policy for the City of New York.
- Lead agency efforts to improve operations and delivery of services to more than 3 million New Yorkers a year.
- Work with staff to design programs and initiatives to fill gaps in the social service continuum.
- Oversee resource allocation, including a budget of approximately $14 billion annually and 12,000 employees.
- Liaise with critical partners including labor, elected officials, service providers, advocates, and impacted clients to advance transparency and collaboration.
- Facilitate interagency work with sister agencies across levels of government.
- Represent the agency externally and with the press to promote the agency and the Administration's work.
- Advocate for legislative and regulatory changes to support the agency's work and negotiate proposed legislation that impacts DSS.

**First Deputy Commissioner, *New York City Department of Homeless Services***
*New York City, 2019-2023*
Managed day-to-day operations at the largest homeless services agency in the nation. Crafted agency policy and operational strategy, including coordination of the agency's COVID and asylum responses.

- Oversaw the teams supporting shelter provision, including capacity development, facilities and operations, budget, rehousing services, vacancy control, and strategic planning.
- Led the agency's COVID response, including creation of isolation and quarantine space, relocation of shelters into hotels, and implementation of testing and vaccination programs.
- Developed new affordable housing opportunities for DHS clients by creating a new project-based rental assistance program that leverages social service dollars for permanent housing.
- Shaped agency policy and programs, including development of the Journey Home plan to address chronic street homelessness.
- Managed DHS capacity planning, including development of new shelters, close down of shelters that do not meet standards, and opening of more than 1,200 stabilization beds in response to the overnight subway shutdown in 2020.
- Coordinated closely with agency partners on provider financial management, including contracting and payments.
- Facilitated inter-agency collaboration around housing placements, health care, and other services for DHS clients.
- Testified to the City Council on a range of DHS operational and policy issues and represented DHS at community meetings as needed.

**Deputy Commissioner for Development,**
*New York City Department of Housing Preservation and Development*
*New York City, 2016-2019*

Led the team with primary responsibility for implementing the Housing New York plan to create and preserve 300,000 units of affordable housing in 12 years.   Collaborated with other members of the senior leadership team to shape agency policy, including creation of the Housing New York 2.0 plan.

- Oversaw the Office of Development, the housing production arm of the agency, responsible for:
  - Financing affordable housing, including record breaking production of 34,000 units in 2018 and a 46% increase in homeless set-aside units.
  - Implementation of tax benefits for a range of residential projects.
  - Management of team of 350.  Significantly expanded human capital development initiatives for the Office to promote staff retention and growth.
  - Administration of a capital budget of approximately $1.2 billion annually.
- Created policies and programs to achieve housing goals, including expansion of homeless set-asides and housing opportunities for extremely low income households, neighborhood stabilization initiatives, and homeownership support.
- Re-engineered Office operations to improve oversight, compliance, and timeliness of affordable housing production.
- Coordinated interagency initiatives, working closely with City, State, and Federal agencies.
- Expanded the pool of developers working in affordable housing through outreach, site designation, and policies and processes that facilitate not-for-profit and MWBE participation.

**Chief Operating Officer, *Settlement Housing Fund, Inc.***
*New York City, 2014-2016*

Oversaw operations and formulated strategy decisions to ensure organizational stability and growth in housing and social service programs.

- Managed daily operations, including fiscal, government grants, and human resources.
- Oversaw housing development activity, including proposal submissions, underwriting, coordination with funders and other members of development team, and land use approvals.
- Reshaped the SHF affordable housing lease-up operation and facilitated new business development.
- Created an asset management function to ensure comprehensive oversight of and planning for the portfolio.
- Coordinated budgeting for SHF and affiliate organizations.
- Worked with the President and Board of Directors to develop a strategic plan for the organization, and to develop new business opportunities.
- Oversaw audits, and other reporting requirements SHF has to lenders, government agencies, foundations and other funders.
- Provided updates and briefings on financial matters to Board of Directors.
- Instituted process changes to improve efficiency and accountability.

**Deputy Commissioner for Financial Management and Analysis,**
*New York City Department of Housing Preservation and Development*
*New York City, 2006-2014*

As a member of the senior team, contributed to critical policy development and operational decision making.  Played a leadership role in key agency initiatives, including the 2010 update to the New Housing Marketplace Plan, utilization of American Recovery and Reinvestment Act funds, and response to Superstorm Sandy.  Facilitated Department-wide strategic planning efforts.

- Oversaw divisions totaling approximately 350 staff people, responsible for:
  - Management of HPD's expense and capital budgets, totaling over $1 billion annually.

- o Administration of HPD's Section 8 program, which is the fifth largest in the nation and serves more than 35,000 households.
- o Tracking and analysis of HPD's performance metrics.
- Managed agency response to significant changes in resource availability, including 8 cuts in 4 years to HPD's City funds, a 54% reduction in HOME block grant funds, and application of "sequestration" cuts to HPD's fully utilized Section 8 program.
- Worked with program staff across the agency to solve resource-related problems and incorporate financial analysis and budget planning into program design.
- Built a performance measurement team for HPD to promote data driven program design decisions.
- Promoted from Director of Resource Planning and Analysis, and Assistant Commissioner for Budget.

**Assistant Deputy Director, *New York City Independent Budget Office***
*New York City, 2001-2006*

Provided non-partisan analysis of the budgets and programs of housing-related agencies in New York City to elected officials, the press, advocacy groups, and other stakeholders.

- Assisted in supervision of budget analysts, including overseeing development of research proposals, reviewing quantitative analyses and writing, and facilitating outreach to a variety of city agencies.
- Tracked and analyzed the budgets of the Department of Housing Preservation and Development, the Department of Homeless Services, and the Department of Buildings.
- Conducted both quantitative fiscal and qualitative programmatic analysis of agency activities.

## Education

**Goldman School of Public Policy, UC Berkeley, 2001**
Master of Public Policy.

**Amherst College, 1996**
B.A. in anthropology, *summa cum laude*. Member of *Phi Beta Kappa* honor society.

## Honors and Memberships

**Citizens Housing and Planning Council.** 2023 Housing Impact Award
**New Destiny Housing Corporation.** 2019 Honoree
**Fifth Avenue Committee.** 2019 Public Partner Award
**New York City Leadership Institute**. Member of the 2007-8 class of the City's executive training program.
**New York City Health and Hospitals Corporation.** Board Member, 2023-present.
**Neighborhood Restore.** Board Member, 2015-2019.
**New York City Housing Partnership.** Board Member, 2016-2019
**Friends of PS-IS 187**. Board Member, 2011-2018. Treasurer, 2011 to 2015.

At IAS/Special Term Part $33$ of the
Supreme Court of the State of New York,
held in and for the County of New York,
held at the Courthouse thereof,
located at 60 Centre Street,
New York, New York on the 8th
day of January, 2024

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY OF NEW YORK

PRESENT: Hon.   **Hon. Mary V. Rosado**

---

THE COMMISSIONER OF THE NEW YORK
CITY DEPARTMENT OF SOCIAL SERVICES,

        Plaintiff,

        v.

BUCKEYE COACH LLC; CARDUAN TOURS
LLC; CLASSIC ELEGANCE COACHES LLC;
COASTAL CREW CHANGE COMPANY LLC;
EJECUTIVO ENTERPRISES INC.; EL PASO
UNITED CHARTERS LLC; GARCIA AND
GARCIA ENTERPRISES INC. (D.B.A.
FRANCISCO TOURS); JY CHARTER BUS INC.;
LILY'S BUS LINES INC.; MAYO TOURS, INC.;
NORTENO EXPRESS LLC; ROADRUNNER
CHARTERS INC.; SOUTHWEST CREW
CHANGE COMPANY LLC; TRANSPORTES
REGIOMONTANOS INC. (D.B.A. AUTOBUSES
REGIOMONTANOS); VLP CHARTER LLC;
WINDSTAR LINES INC.; and WYNNE
TRANSPORTATION LLC.,

        Defendants.

---

Index No. _150122/2024_

**ORDER TO SHOW CAUSE**

$MS \#1 - INJUNCTION$

UPON the accompanying Complaint, verified on January 4, 2024, and the Affirmation of

the New York City Social Services Commissioner Molly Park, sworn to on January 4, 2024, and

the exhibits annexed thereto, and the Affirmation of Tanaz Moghadam, Esq., sworn to on January 4, 2024, and the Memorandum of Law, and good cause being alleged, it is hereby LET ORDERED, that, absent agreement by the parties and Court on a stipulated alternate briefing and hearing schedule resulting from the parties' meet and confer process beginning shortly after the commencement of this action, Defendants herein, or their attorneys, show cause at IAS Part 33 of this Court, to be held at the Courthouse located at 60 Centre Street, New York, New York on the 22nd day of January 2024 in Room 442 at 9:30 a.m./p.m. of that day, or as soon thereafter as counsel can be heard, why an order should not be made and entered:

(i)    Enjoining, pursuant to Section 149 of the New York Social Services Law, the Defendants to post a bond in an amount to be determined by the Court to pay the Plaintiff New York City Social Services Commissioner for the cost of caring for individuals who have already been transported from Texas to New York City to implement the Texas Governor's plan;

(ii)   Enjoining, pursuant to Section 149 of the New York Social Services Law, the Defendants to pay the Plaintiff New York City Social Services Commissioner for the cost of caring for individuals who are transported after the date of the Court's order from Texas to New York City to implement the Texas Governor's plan; and

(iii)  Granting such other and further relief as this Court deems just and proper;

AND, proper cause being alleged, IT IS HEREBY:

FURTHER ORDERED that Defendants' answering papers, if any, shall be served upon Plaintiff's counsel by email on or before the 15th day of January, 2024, no later than 5:00 a.m./p.m.; and it is

Case 1:24-cv-00326-VSB   Document 1-2   Filed 01/16/24   Page 31 of 34

FURTHER ORDERED that Plaintiff's reply papers shall be served upon Defendants'

counsel by email on or before 19th day of January, 2024, no later than $5:00$ a.m. p.m..: and it is

FURTHER ORDERED that personal service of a copy of this Order To Show Cause,

together with the Summons and Verified Complaint, and the supporting papers, upon the

Defendants' designated process agents, for which, in accordance with 49 C.F.R. § 366.4, the

Defendants are required to file such a designation with the U.S. Department of Transportation for
and New York State service requirements
all 48 contiguous states, on or before the 11th day of January, 2024, no later than $5:00$ a.m. p.m.

shall be deemed good and sufficient service thereof.

ENTER:

May V Rosado JSC
J.S.C.
**Hon. Mary V. Rosado**

Case 1:24-cv-00326-VSB   Document 1-2   Filed 01/16/24   Page 32 of 34

SUPREME COURT OF THE STATE OF NEW YOR K
COUNTY OF NEW YORK_____

THE COMMISSIONER OF THE NEW YORK CITY
DEPA RT MENT OF SOCIAL SERVICES

                        PLAINTIFF,

-V-

BUCKEYE COACH LLC; CARDUA N TOURS LLC;
CLASSIC ELEGANCE COACHES LLC;
COASTAL CREWCHANGE COMPANY LLC;
EJECUTIVO ENTERPRISES INC ; EL PASO UNITED
CHARTERS LLC; GARCIA AND GARCIA ENTERPRISES
INC. ( D. B. A. FRANCISCO TOURS); JY CHARTER BUS
INC.; LILY' S BUS LINES  INC.; MAYO TOURS, INC.;
NORTENO EXPRESS LLC; ROADRUNNER CHARTERS INC.;
SOUTHWEST CREW CHANGE COMPANY LLC;
TRANSPORTES REGIOMONTANOS INC. (D. B. A. AUTOBUSES
REGIOMONTANOS); VLP CHARTER LLC; WINDSTAR LINES INC.
and WYNNE TRANSPORTATION LLC.

                        DEFENDANTS

_____

Index No: 150122/2024

## NOTICE OF APPEARANCE

PLEASE TAKE NOTICE of the appearance of the undersigned, Robert J. Hantman and Joseph

Ferrara, of the law firm of Hantman & Associates, as counsel for Defendants Roadrunner Charters,

Inc.("Defendants") in the above-referenced matter. All future pleadings, correspondence, etc., should

also be directed to the undersigned as counsel for Defendants.

                        Respectfully submitted,

                         By: /s/ Robert J. Hantman
                        Robert J. Hantman, Esq.
                        By:/s/ Joseph Ferrara_____
                        Joseph Ferrara, Esq.
                        Of counsel
                        1120 6th Avenue, New York, NY, 10036
                        (212) 684-3933
                        Email: rhantman@hantmanlaw.com
                        jferrara@hantmanlaw.com

Attorney for Defendants

**CERTIFICATE OF SERVICE**

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished by E-Mail and/or New York Portal on January 9, 2024 Muriel Goode-Trudant First Assistant Corporation Counsel of the City of New York, 100 Church Street, 6-101, New York, NY 10007, mgoodetr@law.nyc.gov

By: /s/ Robert J. Hantman
Robert J. Hantman, Esq.
/s/ Joseph Ferrara_____
Joseph Ferrara Esq.

**CERTIFICATE OF SERVICE**

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished by E-Mail and/or Florida E-Portal on June 16, 2023 to Kevin J. Guerrero, Esq., Warrior Law Group, PLLC, 1650 SE 17th Street Suite 204, Fort Lauderdale, Florida 33316, kguerrero@warriorlawgroup.com, and Michael A. Moreira, Esq., mmoreira@warriorlawgroup.com.

By: /s/ Robert J. Hantman

Robert J. Hantman, Esq.

Florida Bar No.: 204935