# HANTMAN & ASSOCIATES

ATTORNEYS AT LAW
1120 Avenue of the Americas
4th Floor
New York, New York 10036
(P) 212-684-3933
(F) 212-465-2192
www.Hantmanlaw.com

**ROBERT J. HANTMAN**
rhantman@hantmanlaw.com
New York, New Jersey, & Florida Bars

January 31. 2024

**ATTN:** *The Honorable Vernon S. Broderick*

**RE:** *Commissioner of NYC Dept. of Social Services v. Buckeye Coach LLC et al*, 1:24-cv-00326-VSB – United States District Court, Southern District of New York. Submission of Letter Brief in Support of Opposition to Request for an Injunction

Dear Hon. Broderick:

Our firm represents Roadrunner Charters Inc.("Roadrunners"). As this court is well aware, a preliminary injunction is an extraordinary remedy never awarded as of right. Munaf, 553 U. S., at __ (slip op., at 12). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Production Co., 480 U. S., at 542. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Romero-Barcelo, 456 U. S., at 312; see also Railroad Comm'n of Tex. v. Pullman Co., 312 U. S. 496, 500 (1941)  Since a preliminary injunction can restrain a party's actions for a long period of time, the U.S. Supreme Court has set a high burden of proof for a plaintiff seeking an injunction. The Court identified a four-part balancing test in Winter v. Natural Resource Defense Council, 555 U.S. 7 (2008).

Further, plaintiff must establish that the case is of such merits as to be likely to succeed, and  that without the injunction irretrievable harm may be done, that the balance of fairness and policy favors his side of the case and that an injunction is in the public interest.

In the instant case none of these requirements are satisfied as the weight of the law, as detailed in our earlier letter brief dealing with  a "Federal Question", negate plaintiffs reliance on

| NEW YORK | FLORIDA | NEW JERSEY | NEW YORK |
|---|---|---|---|
| Hantman & Associates | HANTMAN & ASSOCIATES | Joseph J. Ferrara, Esq. | Mathew Simon. |
| 1120 Avenue of the Americas | 650 WEST AVENUE | Of Counsel | Of Counsel |
| 4th Floor | SUITE 2408 | 111 Paterson Avenue | msimon@hantmanlaw.com |
| New York, NY 10036 | MIAMI BEACH, FL 33139 | Hoboken, NJ 07030 | 929-366-4522 |
| 917-693-7444 | | 908-489-9400 | |

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

the New York Social Services Law Section 149 since, on its face and/or as applied, it violates 1) the Supremacy Clause of the U.S. Constitution 2) the Interstate Commerce Clause of the U.S. Constitution Edwards v. California 314 U.S. 160, 62 S. Ct. 164, 86 L. Ed 119 (1941). 3) the Equal Protection Clause of the U.S Constitution.

     Further, Section 149 of the New York Social Services Law, as applied in this case by the city, is unlawful and prejudicial, because its actual purpose and effect is to discourage and/or preclude migrant travel to New York City. The actual purpose of the litigation is intended to discourage and/or preclude migrants from declaring New York City as their domicile or residence, and to expose interstate motor carriers to financial ruin and potential insolvency merely for performing authorized interstate passenger transportation services in accordance with the carrier's federal operating authority to transport passenger freely in interstate commerce.

     More specifically, neither the Constitution nor Federal Law imposes indigency pre-screening of passengers' requirements as a condition to interstate passenger travel among the several states. It is submitted that the City of New York has no authority to do so, whether directly or indirectly, because of the application of its local arcane statute. Free passenger travel among the several states is protected and guaranteed under the Commerce Clause to the United States Constitution and under Article III, Section 2, Clause 1 of that instrument.

     Further the affidavit of Defendant RoadRunners' Chief Executive Officer Ron Wills (See Exhibit 1, confirms that if the New York law is enforced by the Court against Road Runners, they will cease migrant transportation to New York and other points and places in the several states where the migrant elects to be transported due to the substantial damage claim exposure that will likely result in the Company's insolvency.

     Also, should plaintiffs' position be adopted, the increased costs and uncertainty that would result from the attempt to screen passengers for "indigency," as a condition to transport, to avoid such financial exposure and ruin would cause irrep Rarable damage. According to the city, buses can only transport immigrants who are financially able to support themselves. Also, we incorporate by reference the facts detailed in the affidavit of Ron Wiils, attached hereto.

     Based on the foregoing, it is respectfully submitted that a Preliminary Injunction be denied and, to the extent, there is any doubt, a plenary hearing should be scheduled to afford an opportunity for the defendants to defend themselves in what now appears to be no more than a random and selective attack on defendants – not trains, airplanes or cars, the Federal Government or the State of Texas - who have absolutely no say in immigration policy or New Yorks decision to be a "Sanctuary City".

    Respectfully,

  /s/ Robert Hantman
Robert J Hantman, Esq.
Hantman & Associates
rhantman@hantmanlaw.com

 /s/ Joseph Ferrara
Joseph Ferrara, Esq.
jferrara@hantmanlaw.com

 /s/ Nyall Cook
` Nyall Cook, Esq
ncook@hantmanlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff,<br><br>v.<br><br>BUCKEYE COACH LLC; CARDUAN TOURS LLC; CLASSIC ELEGANCE COACHES LLC; COASTAL CREW CHANGE COMPANY LLC; EJECUTIVO ENTERPRISES INC.; EL PASO UNITED CHARTERS LLC; GARCIA AND GARCIA ENTERPRISES INC. (D.B.A. FRANCISCO TOURS); JY CHARTER BUS INC.; LILY'S BUS LINES INC.; MAYO TOURS, INC.; NORTENO EXPRESS LLC; ROADRUNNER CHARTERS INC.; SOUTHWEST CREW CHANGE COMPANY LLC; TRANSPORTES REGIOMONTANOS INC. (D.B.A. AUTOBUSES REGIOMONTANOS); VLP CHARTER LLC; WINDSTAR LINES INC.; and WYNNE TRANSPORTATION LLC,<br><br>Defendants. | 1:24-cv-00326-VSB |

## AFFIDAVIT OF RON WILLS REGARDING DEFENDANT ROADRUNNER CHARTERS INC'S NOTICE OF REMOVAL

1. I, Ronald Wills, solemnly affirm under the penalty of perjury that the contents of the following are true to the best of my knowledge, information, and belief.

2. I am above the age of eighteen and have personal knowledge of the facts contained herein.

3. I submit this affidavit in support of the Notice of Removal by Defendant Roadrunner Charters, Inc. ("Roadrunner").

4. I am the Chief Executive Officer of Defendant Roadrunner Charters, Inc.

5. I am a resident of the state of Texas, and not the state of New York.

6. Neither Roadrunner Charters nor any of its principals maintain residence in the State of New York.

7. Roadrunner is an interstate motor carrier holding an interstate motor coach operating certificate issued by the Federal Motor Carrier Safety Administration ("FMCSA") authorizing Roadrunner to transport passengers in interstate commerce within the Continental United States.

8. Roadrunner contracted with an outside party with whom contracted with the Texas Department of Emergency Management, a department of the State of Texas (hereinafter "TDEM"), to provide interstate passenger transport to migrants by motor coach. Each migrant freely chose their destination point and confirmed their choice in a writing signed and delivered by the migrant and provided to TEDEM, freely and of their own volition. The instrument is described as an "*Official Consent to Transport Form*" (see. Exhibit 1). The migrants transported to New York City their declared destination and domicile, did so without influence by Road Runner.

9. The transport provided by Roadrunner to the outside party and ultimately TEDEM, and the migrants is nothing more than the fulfillment of the migrants right to freely travel to New York City, or to any other point and place of their choosing. Roadrunner's sole function in this case is that of an interstate motor carrier providing contracted interstate passenger transportation services to New York City in accordance with its FMSCA passenger motor carrier operating

certificate. The contract among TEDEM, the outside party, the migrants, and Roadrunner was accepted and performed by Roadrunner in the ordinary course of its business operations as an FMCSA interstate motor carrier.

10. I observe that the defendants named in Plaintiff's suit are limited to the seventeen FMCSA defendant motor carriers named parties to this action and does not include other modes of interstate transportation such as train, air, boat, which similarly transported migrants to New York City.

11. I observe that New York City has declared itself a sanctuary city and welcomes migrants.

12. New York City is misapplying Section 149 of the New York Social Services Law. If the Court were to enforce this law against Roadrunner, the Company would cease transportation of migrants to New York City because the potential damage claim asserted by New York City for migrant support far exceeds the payment for the interstate transportation service provided. Based on the statements made by New York City political representatives, I believe that that is the actual purpose and objective of the Plaintiff's complaint. Such a result would also threaten the Company's financial viability and solvency. The transportation of migrants and other indigents by interstate motor carriers would cease.

13. The City's complaint to recover damages for the cost of migrant care and support incurred by the City if enforced against Roadrunner will impose a substantial burden on Roadrunner and the other interstate motor carriers. The carriers would be required to adopt methods to screen passengers to eliminate and refuse transport to migrants and indigents because of the financial exposure. The necessity to screen passengers for 'indigency' as a condition of transport introduces an untenable operational complexity and

financial burden, further jeopardizing the company's viability and our ability to provide these essential transportation services.

14. The implications of this lawsuit extend far beyond its immediate parties.

15. If successful, the action could have a 'chilling effect' on carriers like Roadrunner.

16. This is not only a concern for the financial viability of these carriers but also raises significant questions about the impact on migrants' rights and the broader principles of free interstate travel.

17. As the Chief Executive Officer of Roadrunner, I am acutely aware of the dire financial implications this lawsuit holds for our company.

Enforcement of this New York law against Roadrunner could potentially lead to insolvency, given the substantial exposure to damage claims.

X _____
Ronald Wills
President/CEO Roadrunner Charters Inc.

## Verification

State of Texas

County of <u>Tarrant</u>

On this ___31st___ day of ___January___, 20_24_, BEFORE ME THE UNDERSIGNED, A NOTARY PUBLIC IN AND FOR SAID STATE, PERSONALLY APPERARED ___Ronald Wills___, KNOW OR IDENTIFIED TO ME TO BE THE PERSON WHOSE NAME IS SIGNED ON THE PRECEDING OR ATTACHED DOCUMENT, AND ACKNOWLEDGED TO ME THAT HE/SHE SIGNED IT VOLUNTARILY FOR ITS STATE PURPOSE.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal in the county and state aforesaid on the day and year above written.

_Sophia Martinez_
Notary Public Signature
Printed Name: _Sophia Martinez_
My Commission Expires: _11-14-25_

SOPHIA MARTINEZ
Notary ID #131350991
My Commission Expires
November 14, 2025